UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO,
LOCAL UNION NO. 3,

                          Petitioner,

      – against –

CHARTER COMMUNICATIONS, INC.,

                         Respondent.

**MEMORANDUM & ORDER**

17-CV-5357

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 26 2017 ★

BROOKLYN OFFICE

**Appearances:**

International Brotherhood of
Electrical Workers,
AFL-CIO, Local Union No. 3:

                                  Robert T. McGovern
                                  John H. Byington, III
                                  Marty Gerard Glennon
                                  Archer Byington Glennon & Levine LLP
                                  One Huntington Quadrangle, Suite 4C10
                                  POB 9064
                                  Melville, NY 11747

**Charter Communications, Inc.:**

                                  Kenneth Alan Margolis
                                  Kauff McGuire & Margolis LLP
                                  950 Third Avenue
                                  14th Floor
                                  New York, NY 10022



JACK B. WEINSTEIN, Senior United States District Judge:

**Table of Contents**

I.   Introduction ........................................................................................................................... 1
II.  Factual Background.............................................................................................................. 2
    A.   Collective Bargaining Agreement (Apr. 1, 2009 – Mar. 31, 2013)............................... 2
    B.   Memorandum of Agreement .......................................................................................... 3
    C.   Work Stoppage and Legal Aftermath ............................................................................ 3
    D.   NLRB Administrative Law Judge Decision #1 (Apr. 28, 2015) ................................... 4
    E.   2016 E.D.N.Y. Decision ................................................................................................. 5
    F.   NLRB Administrative Law Judge Decision #2 ............................................................. 6
    G.   2017 Second Circuit Court of Appeals Decision........................................................... 7
    H.   March 28, 2013 – Present .............................................................................................. 9
III. Law........................................................................................................................................ 10
IV.  Application of Law to Facts ................................................................................................ 14
V.   Conclusion ............................................................................................................................ 16

I.  Introduction

Plaintiff International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 3 ("Local 3") seeks a temporary restraining order staying an arbitration set to take place at the instance of defendant, Charter Communications, Inc. ("Charter"). *See* American Arbitration Association ("AAA") Case No. 01-17-0002-1912. Charter's arbitration demand is based on an arbitration provision memorialized in a Memorandum of Agreement ("MOA") between Local 3 and Time Warner Cable ("TWC"), a telecommunications company recently purchased by Charter (respondent is referred to as "TWC/Charter"). *See* ECF No. 1, Exh. A, Verified Petition to Stay Arbitration ("Petition"), at ¶ 4. Local 3 claims the MOA—and therefore the arbitration provision it contains—is invalid and unenforceable.

Under the special circumstances of this complex and long-running litigation, Local 3's request for a preliminary injunction staying arbitration is denied. No immediate and irreparable

1

injury will result from its denial. The arbitration can be completed swiftly and at little cost. Since the union will not participate, the arbitration will not create an expense. *See* Sept. 25, 2017 Hr'g Tr. Should the arbitration result in a decision adverse to petitioner, the union can challenge it on a motion to enforce by the respondent with a fuller explication of the complex background of the dispute.

## II. Factual Background

This motion is the latest chapter in a long-running labor dispute between Local 3 and TWC/Charter. Many of the facts relevant to the instant application have been found by the court. *See Time Warner Cable of New York City LLC v. International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 3, et al.*, 170 F. Supp. 3d 392 (E.D.N.Y. 2016). The "Factual Background and Procedural History" (Section II) of this prior decision is incorporated in the present memorandum and order.

Below are facts pertinent to the present application, with citations made to the court's previous decision where appropriate. For reasons of clarity, the subsections and facts are not in strictly chronological order.

### A. Collective Bargaining Agreement (Apr. 1, 2009 – Mar. 31, 2013)

Local 3 and TWC entered into a collective bargaining agreement ("CBA") in effect from April 1, 2009 through March 31, 2013. *TWC*, 170 F. Supp. 3d at 401. Section 24 of the CBA defined the term "grievance" and detailed a process for resolving grievances, including the use of final binding arbitration. *Id.* Section 31 of the CBA contained a "no-strike clause:" "There shall be no cessation or stoppage of work, service or employment, on the part of, or at the instance of either party, during the term of this Agreement." *Id.* (quoting the CBA).

### B. Memorandum of Agreement

On March 28, 2013, the parties attempted to enter into a Memorandum of Agreement ("MOA") to extend the CBA through March 31, 2017, with specified changes. *Id.* at 402. The changes to the CBA were to become operative once Local 3's members ratified the agreement. *Id.* On April 4, 2013, Local 3's members "unanimously ratified a four-year agreement." *Id.* (quoting Local 3's website). On March 31, 2014, TWC filed an unfair labor practice charge with the NLRB claiming that Local 3 engaged in an unfair labor practice by refusing to sign a collective bargaining agreement implementing the changes in the MOA and riders. *Id.*

### C. Work Stoppage and Legal Aftermath

On April 2, 2014, Local 3 members caused a work stoppage at TWC's Paidge Avenue facility. *Id.* This work stoppage and TWC's response to it led to 1) TWC initiating litigation in this court for a preliminary injunction to enjoin further strikes and seeking arbitration of grievances and 2) Local 3 filing an unfair labor practice charge with the National Labor Relations Board ("NLRB") predicated on TWC's disciplining employees engaged in the work stoppage. *Id.* at 402-03.

Following an evidentiary hearing, this court found that "Time Warner and Local 3 are parties to a Collective Bargaining Agreement" that "includes . . . provisions providing for grievance procedures and arbitration in place of cessation or stoppage of work." 2014 WL 1779827, at *1 (E.D.N.Y. May 5, 2014). The court denied TWC's request for a preliminary injunction in part because of the availability of arbitration. *Id.* at *4.

TWC formally commenced the arbitration a few days after the denial of its request for a preliminary injunction. *TWC*, 170 F. Supp. 3d at 403-04. Local 3 offered procedural objections,

but acknowledged that it and TWC were parties to a CBA which included arbitration and no-strike provisions. *Id.* at 404.

The arbitrator rejected Local 3's procedural objections. TWC and Local 3 then signed a succinct and independent arbitration agreement on July 24, 2014, the first day of arbitration. It specified that two questions were being submitted to the arbitrator: "Did the Union violate the no-strike provision of the collective bargaining agreement? If so, what shall be the remedy?" *Id.*

No substantive objections to the arbitrator's authority or to the validity of the CBA were raised during the arbitration proceedings. *Id.* Following two hearings, the arbitrator issued an interim award on December 12, 2014 finding that Local 3 violated the no-strike clause (Section 31) of the CBA. *Id.* at 405. As part of his award, the arbitrator directed Local 3 to refrain from engaging in any future violations of the no-strike provision. *Id.*

### D. NLRB Administrative Law Judge Decision #1 (Apr. 28, 2015)

On April 28, 2015, NLRB Administrative Law Judge ("ALJ") Steven Fish dismissed TWC's unfair labor practice charges against Local 3 for refusing to sign a collective bargaining agreement. *Id.* at 405. He concluded that because "the terms of the MOA were ambiguous as to whether the riders from the previous agreements were to be included in the successor agreement[,] . . . the parties had plausible but different understandings and beliefs as to this issue, and therefore there was no meeting of the minds and no contract." *Id.* (quoting NLRB Case No. 29-CB-125701 at 18). Neither the no-strike provision nor the arbitration provision were cited as contested issues where there was no "meeting of the minds." He recommended that TWC's complaint be dismissed in its entirety. The ALJ's rulings, findings, conclusions, and order were adopted by the NLRB on October 29, 2015. 353 NLRB No. 30 (N.L.R.B. 2015).

### E. 2016 E.D.N.Y. Decision

Following a final award by the arbitrator, TWC moved for summary judgment confirming and enforcing the final arbitral award. *TWC*, 170 F. Supp. 3d at 408. Local 3 and the NLRB opposed enforcement of the arbitral award

> because, after the close of the arbitration proceedings but before the issuance of a final award, the NLRB found there was no valid CBA. In the absence of a valid CBA, it was argued, there was no enforceable arbitration clause and no valid no-strike obligation. Even if the parties were found to have agreed to arbitrate, Local 3 and the NLRB contended, the award was unenforceable as against public policy because it conflicts with a decision of the NLRB.

*Id.* at 415. This court found these arguments "unpersuasive." *Id.* It held that the precise arbitration agreement signed by both parties on the first day of the arbitration was valid and sufficient. *Id.* at 415-18. Whether the CBA's general no-strike or arbitration provisions were operative was not relevant:

> [u]nder the magic of the broad federal arbitration statute, an arbitration may be specifically authorized by the parties to decide whether a non-operative no-strike clause has been violated, and to assess damages. *For the purposes of the specific arbitration*, the no-strike clause in the CBA, as well as the CBA itself, could be assumed to be operative by the arbitrator. It is irrelevant that he was not authorized to also rely for jurisdiction on the general arbitration clause contained in the CBA. The specific arbitration agreement sufficed.

*Id.* at 418 (emphasis in original).

The court struck the portion of the arbitrator's award that enjoined the union from violating the contractual no-strike provision in the future because "[t]he issue of future work stoppages was not presented to the arbitrator by the parties' specific arbitration agreement of July 24, 2014." *Id.* at 419. In dicta, the court also noted that "because the NLRB determined that there is no current CBA between the parties, this language concerning potential future actions by Local 3 or its members exceeds the arbitrator's authority." *Id.*

### F. NLRB Administrative Law Judge Decision #2

Initially, in January 2015, the NLRB dismissed Local 3's unfair labor practice charge against TWC. It had found TWC to be within its rights to discipline employees engaged in the work stoppage because of the CBA's no strike provision. *TWC*, 170 F. Supp. 3d. at 403. Following the ALJ's determination that no contract was formed between the parties, and the NLRB's adoption of the ALJ's decision, the NLRB reopened Local 3's charge. *Id.* at 407-08.

On June 14, 2016, NLRB ALJ Michael A. Rosas issued a decision on whether TWC committed an unfair labor practice by disciplining four employees who participated in April 2, 2014 work stoppage. *See* NLRB Case No. 02-CA-126860. He framed the issue as follows:

> [Though attendance at this work stoppage] clearly constituted protected concerted activity . . . that conduct lost its protection if it violated an extant no-strike prohibition incorporated into the terms and conditions of [the suspended union members'] employment. That, in turn, requires an initial determination as to whether the no-strike clause in the expired CBA still applied to unit members as of April 2.

*Id.* at 11. He continued:

> The Board's decision in, [353 NLRB No. 30 (N.L.R.B. 2015)] serves as the law of the case on the issue of whether there was an agreement between the parties regarding the expired CBA by virtue of the MOU entered into by the parties: there was no meeting of the minds as to significant portions of the agreement (the inclusion of local Riders) and thus, the parties did not agree to all of the material terms of a successor CBA.
>
> It is the MOU and not the inability to agree to a successor CBA, which is dispositive with respect to the applicability of the no-strike clause to the events of April 2. The no-strike clause was among the numerous provisions of the expired CBA that were to carry over to the successor CBA but were not mentioned in the MOU. Its incorporation by reference in the MOU is evidenced by the introduction: '[T]he changes summarized below were agreed *upon relative to the [CBA] which will expire on March 31, 2013* and that the full text of the applicable changes will be incorporated in a new [CBA] which shall become effective upon ratification by the Union membership, scheduled for April 4, 2013." (emphasis supplied) The only reasonable interpretation of that preamble is that the changes mentioned into the MOU were being added to the language of the expired CBA along with those provisions not mentioned.

[. . .]

> In the instant case, however, the intention of the parties was reflected in the MOU, which incorporated certain provisions from the expired CBA, including the no-strike clause. The MOU constituted a clear continuation of the waiver of employees' rights set forth in the expired CBA . . . Therefore, the no-strike clause, which remained in effect on April 2, prohibited the four discriminatees from the "cessation or stoppage of work, service or employment on April 2. Contrary to the Company's assertion, however, the four discriminatees did not violate the terms of the no-strike clause since they were in a nonworking status at the time. As such, they could not be deemed to have ceased or stopped working during the pendency of the strike.

*Id.* at 11-13. An appeal of this decision is apparently now pending before the NLRB. *See* ECF No. 1, Exh. A, Aff. of Marty Glennon, at ¶ 13.

### G. 2017 Second Circuit Court of Appeals Decision

Local 3, TWC, and the NLRB appealed from this court's 2016 decision enforcing the arbitration award. On March 28, 2017, the United States Court of Appeals for the Second Circuit affirmed the decision in all respects. The Court of Appeals rejected Local 3's argument that confirmation of the arbitration award violated public policy because the NLRB later found that there was no "meeting of the minds," holding that, "as the district court found, the Union waived [this argument] by (1) expressly asking the arbitrator to determine its liability under the no-strike clause of the 2013 CBA, and (2) lodging no challenge to the CBA until 5 months after the arbitrator issued an adverse interim award." 684 Fed. App'x 68, 71 (2d Cir. 2017) (summary order). The appellate court also agreed with this court's decision to strike the portion of the arbitral award concerning future strikes "because the questions presented to the arbitrator did not address disputes as to future violations of the no-strike provision." *Id.* at 72.

The Court of Appeals referred to a "2013 CBA" two times in its decision. First, it remarked that Local 3 waived its right to strike "in its 2009 CBA, and that waiver was reincorporated in the 2013 CBA." *Id.* at 71. It stated in a footnote that

> [b]ecause we have concluded that the Union waived its challenges to the 2013 CBA for purposes of the arbitration presented here, and that the question of future strikes was not

7

submitted to the arbitrator, we need not address the effect of the 2015 NLRB decision. The CBA to which the decision relates is scheduled to expire on March 31, 2017, in any event.

*Id.* at 72 n. 2. Charter, seizing on these statements, argues that "Local 3's current application is wholly foreclosed by the Second Circuit's prior decision. There is simply no occasion to revisit the Second Circuit's determination that the no-strike obligation was renewed in 2013 and did not expire until March 31, 2017." ECF No. 11, Charter Letter, at 4.

Charter may not rely on these passing references to foreclose argument on Local 3's instant application. As explained *supra*, the only grounds which were necessary for the Court of Appeals to rely upon were those relied upon by the district court in its decision: the parties agreed to arbitrate certain specific issues in a July 24, 2014 specific, narrowly drawn arbitration agreement. Any statement by the Court of Appeals that could be read to imply that there was a valid CBA signed in 2013 is dicta not binding in the present dispute. *See Baraket v. Holder*, 632 F.3d 56, 59 ("[I]t is not substantive discussion of a question or lack thereof that distinguishes holding from dictum, but rather whether resolution of the question is necessary for the decision of the case."). Though a "lack" of "substantive discussion" is not necessarily the hallmark of dicta, it is apparent that the Court of Appeals would have been more direct in its opinion were it deciding the case on the ground that the parties had formed a valid contract containing no-strike and arbitration clauses.

Both parties contested whether a valid contract existed and the NLRB, an agency with special expertise in labor relations, urged the court to find that no contract was in force. *See* Br. for Intervenor-Defendant-Cross-Appellee NLRB, 2016 WL 6440504; March 22, 2017 oral argument to Second Circuit panel). Moreover, the Court of Appeals explicitly did not "address the effect of the 2015 NLRB decision" finding that there was no valid contract. *TWC*, 684 Fed. App'x at 72, n. 2.

### H. March 28, 2013 – Present

The footnote in the Court of Appeals decision—remarking that the issue of future strikes may be moot because the 2013 CBA "is scheduled to expire on March 31, 2017"—turned out to be ephemeral. On March 28, 2017, the same day the Court of Appeals affirmed the district court's decision, Local 3 went on strike against TWC/Charter. *See, e.g.*, Joe Richard, *Spectrum Workers Soldier On in Months-Long Strike*, Labor Notes, Aug. 11, 2017, *available at* http://www.labornotes.org/blogs/2017/08/spectrum-workers-soldier-months-long-strike ("Some 1,800 members of Electrical Workers (IBEW) Local 3 have been on strike at Spectrum/Time Warner Cable in New York and New Jersey since March 28, more than four months ago."); Petition at ¶ 8. Local 3 apparently remains on strike today.

Charter filed a grievance on March 29, 2017, alleging that the strike violated the no-strike provision of the CBA. *Id.* at ¶ 9. The next day, Local 3 responded that the union and the NLRB both agree that there is no CBA in effect, and the union is therefore not bound to refrain from striking. *Id.* at ¶ 10.

On April 14, Charter filed an arbitration demand with the American Arbitration Association ("AAA") concerning Local 3's violation of the "no-strike clause." *Id.* at ¶ 11. Two weeks later, Local 3 informed the AAA that it would not be participating in the arbitration because there was no agreement obligating the parties to arbitrate; it also filed an unfair labor practice charge with the NLRB "alleging that [Charter] violated federal labor law by seeking to arbitrate its frivolous claim that Local 3 violated the no-strike clause of an expired CBA."

This charge against Charter is still pending before the NLRB. *Id.* at ¶¶ 14-15. AAA proceeded to follow its usual process. After selection of an arbitrator (without input from Local 3),

it scheduled Charter's arbitration demand to proceed to a hearing on September 18, 2017 as AAA Case No. 01-17-0002-1912. *Id.* at ¶¶ 11, 16.

Local 3 moved in New York state court on September 13, 2017 for an order to show cause why AAA Case No. 01-17-0002-1912 should not be stayed pursuant to New York CPLR 7503(b). ECF No. 1, Exh. A, Order to Show Cause. Charter removed the case to federal court on the same day. ECF No. 1, Notice of Removal. The court stayed AAA Case No. 01-17-0002-1912 for one week so an evidentiary hearing on the merits of Local 3's request for a temporary restraining order could be held. ECF No. 12, Order Temporarily Staying Arbitration. An evidentiary hearing on the request for a temporary restraining order ("TRO") was held on September 25, 2017. *See* Sept. 25, 2017 Hr'g Tr.

### III. Law

Petitioner, Local 3, originally filed a petition—stylized as an "order to show cause"— in state court for injunctive relief to stay an arbitration scheduled to begin five days later. The court will treat the petition, now removed to this court, as a motion for a TRO or a preliminary injunction under Federal Rule of Civil Procedure 65. Immediate injunctive relief is sought. Federal procedural law governs this federal court proceeding. *See AIM Intern. Trading LLC v. Valcucine SpA.*, 188 F. Supp. 2d 384, 386 n. 4 (S.D.N.Y. 2002) (applying federal law regarding the issuance of a preliminary injunction to a removed petition for immediate injunctive relief related to arbitration proceedings because "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings.") (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 437 (1974)).

Local 3's petition can be referred to as one for a preliminary injunction or for a TRO; in the present situation the standard for granting either is the same. *See, e.g., Andino v. Fischer*, 555 F.

Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction."); *Residents and Families United to Save Our Adult Homes v. Zucker*, 2017 WL 3446805, at *1 (E.D.N.Y. Aug. 10, 2017) ("A party seeking a temporary restraining order ("TRO") or a preliminary injunction must demonstrate" the same elements).

"A party seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citing *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)) (internal quotation marks omitted). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Demonstrating irreparable harm is a prerequisite for obtaining a preliminary injunction; a party must show such harm is "likely" before the court may address the other elements of the inquiry. *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999); *see also Air Line Pilots Ass'n v. United Air Lines, Inc.*, 2011 WL 4543820, at *2 (E.D.N.Y. Sept. 29, 2011) ("ALPA's failure to demonstrate such harm is sufficient for the Court to deny ALPA's application for a TRO, without the need to address the second prong of the test or the balance of the parties' arguments.").

Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003). A party demonstrates irreparable harm if it shows that there is a

"substantial chance" that, absent an injunction, the parties cannot be returned to the pre-injunction status quo. *Brenntag Intern. Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). "[T]he court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Precedent splits on whether a party suffers irreparable harm if it is forced to arbitrate an issue that it did not agree to arbitrate. *Compare Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) ("Maryland would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable."), *with Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 100 (2d Cir. 1986) ("[A]s the preferred method for resolving labor disputes, arbitration by itself imposes no [irreparable] injury to the resisting party, except perhaps in extraordinarily rare circumstances, which we need not try here to imagine.") (internal quotation marks omitted).

Following *Maryland Cas. Co.*, many courts have held outside of the labor relations context—and at least one court within that context—that irreparable harm may be "presumed" or that it is irreparable harm "per se" if a party is forced to arbitrate a non-arbitrable issue. *See, e.g., Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (relying on *Maryland Cas. Co.* and finding that an investment fund would suffer irreparable injury if forced to arbitrate a dispute against a broker-dealer that is "outside the arbitration agreement"); *Tellium, Inc. v. Corning Inc.*, 2004 WL 307238, at *3 (S.D.N.Y. Feb. 13, 2004) ("Compelling arbitration of a matter not properly subject to arbitration constitutes "per se irreparable harm.") (internal quotation

marks omitted); *Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union Local 365*, 975 F. Supp. 445, 446-47 (E.D.N.Y.1997) ("[A]s to the irreparable harm element of the preliminary injunction inquiry, Ararat may be presumed to suffer irreparable harm if forced to arbitrate a dispute it did not intend to be subject to arbitration after its contract expired.").

Under a newer view, courts "*may no longer simply presume irreparable harm*; rather, plaintiffs must demonstrate that, on the facts of the case, the failure to issue an injunction would actually cause irreparable harm." *WPIX, Inc. v. ivi, inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (emphasis added).

A close examination of *Emery* and *Maryland Cas. Co.* is now warranted. In *Emery*, the union and employer were parties to a valid collective bargaining agreement containing an arbitration clause and were litigating whether that clause was still operative for grievances occurring after the collective bargaining agreement expired. *Emery*, 786 F.2d at 96-99. The court, after deciding the disputes were arbitrable, rejected the employer's bid for a preliminary injunction staying arbitration. It noted that arbitration is "the preferred method for resolving labor disputes," and that neither the "monetary cost of arbitration" nor the possibility of an adverse arbitral decision posed irreparable harm because the arbitrator's award would need to withstand "judicial scrutiny." *Id.* at 100-01.

In *Maryland Cas. Co.*, the court found that the dispute was not subject to arbitration because the aggrieved employees pressing for arbitration were not covered by the parties' collective bargaining agreement. *Maryland Cas. Co.*, 107 F.3d at 982-84. The court then found that the employer "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable," and though "an injury that is adequately compensated by a monetary award is not considered

irreparable, here the time and resources Maryland would expend in arbitration is not compensable by any monetary award of attorneys' fees or damages pursuant to the provisions of the Agreement or the Arbitration Act." *Id.* at 985 (internal quotation marks and citation omitted).

In both cases, the court addressed the merits of the petitioner's claim—the arbitrability of the dispute—before examining the irreparable injury prong. The separate "irreparable harm" inquiry was collapsed into and subordinated to the question of whether the petitioner was "likely to succeed on the merits."

These are two discrete requirements that must be met before a preliminary injunction may issue, and strength in one does not negate the necessity of demonstrating the other. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 21-22 (2008) (rejecting the principle that "a preliminary injunction may be entered based only on a 'possibility' of irreparable harm" if "a plaintiff demonstrates a strong likelihood of prevailing on the merits;" plaintiffs must show that "irreparable injury is *likely*" in order for this "extraordinary remedy" to be awarded) (emphasis in original).

"The threat of irreparable injury is a sine qua non. If there is no irreparable injury, there can [should] be no preliminary injunction." *American Airlines, Inc. v. Imhof*, 620 F. Supp. 2d 574, 579 (S.D.N.Y. 2009) (internal quotation marks, citations, and alteration omitted).

## IV. Application of Law to Facts

In the special circumstances of this case, Local 3 has not demonstrated irreparable harm. It has decided not to participate in the arbitration, so it will not expend time or resources arbitrating the dispute in the absence of a preliminary injunction. Even if it chose to participate, the cost of adjudicating a dispute on its own does not constitute irreparable injury. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy

necessarily expended in the absence of a stay, are not enough.") (citation omitted). The issues before the arbitrator will probably be resolvable without further discovery or extended travail.

If the arbitration results in an outcome favorable to Charter, it will need to enforce its award in district court that is "empowered to vacate arbitral awards where the 'arbitrators exceeded their powers.'" *Valspar Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 81 F. Supp. 3d 729, 734 (D. Minn. 2014) (quoting 9 U.S.C. § 10(a)(4)). "If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it." *Id.* TWC/Charter already conceded on the record that Local 3 has reserved its right to argue in court against enforcement of any arbitration award on the ground that there was no collective bargaining agreement—and therefore, no agreement to arbitrate—in effect during the relevant time period. *See* ECF No. 11, Charter Letter, at 2-3 ("[Local 3] will still have the right to judicial review of the award, and may seek its vacatur by arguing that there was no contract requiring arbitration. . . . Local 3 has repeatedly informed the AAA that it will not participate in the arbitration, and it has reserved its right to argue in court after the arbitration concludes that there was no agreement to arbitrate. (Petition ¶ 15.) Thus, Local 3 will suffer zero harm – irreparable or otherwise – if the arbitration proceeds.").

In general, whether an arbitration agreement exists is an issue for a court, not an arbitrator. *ACEquip Ltd. v. American Engineering Corp.*, 315 F.3d 151, 155 (2d Cir. 2003); *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).

It is almost inevitable that a court will decide the core issue of whether the Local 3 and Charter were parties to a valid collective bargaining agreement in March 2017 that is at the heart of this long-running dispute. It was Local 3's burden to demonstrate by a clear showing that it would be harmed beyond repair if a court did not decide this dispute now by TRO rather than later. It has failed to do so.

The arbitrator's findings shall only relate to whether the incident of March 28th to March 31st, 2017 violated the no-strike clause in the 2013 MOA. *See* ECF No. 1, Exh. A, at 142, Charter Demand for Arbitration (describing the "Nature of Grievance" as "Violation of no-strike clause"). The validity of the 2013 MOA containing the no-strike clause is not before the arbitrator.

V. **Conclusion**

Local 3's motion for a preliminary injunction staying AAA Case No. 01-17-0002-1912 is denied. The temporary stay issued by the court on September 15, 2017 (*see* ECF No. 12) remains in effect until October 9, 2017 at 5:00 p.m. to permit an application by Local 3 to the Court of Appeals for a stay.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: September 25, 2017
Brooklyn, New York