UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, LOCAL UNION NO. 3,<br><br>Petitioner,<br><br>– against –<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>Respondent. | **MEMORANDUM & ORDER**<br><br>17-CV-5357<br><br>FILED<br>IN CLERK'S OFFICE<br>U.S. DISTRICT COURT E.D.N.Y.<br>★ FEB 16 2018 ★<br>BROOKLYN OFFICE |

**Appearances:**

International Brotherhood of
Electrical Workers,
AFL-CIO, Local Union No. 3:

Robert T. McGovern
Alexandra Howell
John H. Byington, III
Marty Gerard Glennon
Archer Byington Glennon & Levine LLP
One Huntington Quadrangle, Suite 4C10
POB 9064
Melville, NY 11747

**Charter Communications, Inc.:**

Kenneth Alan Margolis
Kauff McGuire & Margolis LLP
950 Third Avenue
14th Floor
New York, NY 10022

1

Table of Contents
I. Introduction ........................................................................................................... 2
II. Facts ................................................................................................................. 3
    A. The Original Collective Bargaining Agreement ........................................... 3
    B. Memorandum of Agreement ........................................................................ 4
    C. Local 3's Continued Acceptance of, and Benefit from, the CBA ................ 4
    D. National Labor Relations Board ("NLRB") Decision 1 .............................. 5
    E. NLRB Decision 2 .......................................................................................... 6
III. Law ................................................................................................................... 7
    A. Summary Judgment ...................................................................................... 7
    B. Jurisdiction Under the Labor Management Relations Act ........................... 7
    C. Intent to be Bound ......................................................................................... 8
IV. Application of Law ............................................................................................ 10
V. Conclusion ........................................................................................................ 11

**JACK B. WEINSTEIN, Senior United States District Judge:**

I. Introduction

This action is a continuation of the litigation between International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 3 ("Local 3") and the employer of its members, Charter Communications, Inc. ("Charter"). *See e.g. International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 3 v. Charter Communications Inc.*, No. 17-CV-5357, 2017 WL 4280591, at *1 (E.D.N.Y. Sept. 25, 2017); *Time Warner Cable of New York City LLC v. Int'l Bhd. of Elec. Workers*, 170 F. Supp. 3d 392, 398 (E.D.N.Y. 2016), *judgment entered*, No. 14-CV-2437, 2016 WL 1317402 (E.D.N.Y. Mar. 31, 2016), *aff'd sub nom. Time Warner Cable of New York City LLC v. Int'l Bhd. of Elec. Workers, AFL-CIO, Local Union No. 3*, 684 F. App'x 68 (2d Cir. 2017).

Thousands of union members are employed by Charter in the New York metropolitan area to install and service consumer televisions.

The question is whether Local 3 members were bound by a provision in a Collective Bargaining Agreement ("CBA") requiring arbitration of disputes on March 28, 2017, when they were allegedly on strike?

The parties agree that on March 31, 2017, the no-strike obligation was not in force, so the contested strike period up for arbitration on claimed damages by Charter is three days.

The following uncontested facts establish the existence of a binding agreement mandating arbitration of any dispute prior to March 31, 2017: (1) the parties signed a Memorandum of Agreement ("MOA"), on March 28, 2013, to extend the then in force CBA to March 31, 2017; (2) Local 3 ratified the agreement (the new CBA) by unanimous vote of its 1,300 members; (3) after ratification, the union accepted improved wages and benefits provided as part of the new CBA; and (4) for two years both parties continued to resolve grievances through the arbitration procedures in the new CBA.

Summary judgment is granted in favor of Charter. The no strike and grievance provisions in the new CBA are enforceable. Arbitration is ordered.

II.  Facts

   A. The Original Collective Bargaining Agreement

From April 1, 2009 to March 31, 2013, Local 3 and Time Warner Cable (recently purchased by, and referred to, as "Charter") were parties to a CBA. *International Brotherhood of Electrical Workers*, 17-CV-5357, 2017 WL 4280591, at *1. The agreement covered employees at Charter's six locations: Bergen County, Southern Manhattan, Northern Manhattan, Brooklyn, Queens, and Staten Island (collectively the "Tri-State facilities").

The original CBA governed the dispute resolution process—including arbitration:

> Section 24 of the CBA defined the term "grievance" and detailed a process for resolving grievances, including the use of final binding arbitration. Section 31 of

> the CBA contained a "no-strike clause:" "There shall be no cessation or stoppage of work, service or employment, on the part of, or at the instance of either party, during the term of this Agreement."

*Id.* (internal citations omitted).

The original CBA included a number of location specific riders, unrelated to arbitration or grievance procedure. *See Local Union No. 3 and Time Warner Cable*, 363 NLRB No. 29-CB-125701, at 11 (2015).

### B. Memorandum of Agreement

The parties signed a Memorandum of Agreement ("MOA") on March 28, 2013, extending the original CBA, with some modifications, to March 31, 2017; this constituted the new CBA. *International Brotherhood of Electrical Workers*, No. 17-CV-5357, 2017 WL 4280591, at *2. Changes did not apply to the section banning strikes, or those dealing with arbitration or grievance procedure. *See* Kevin Smith Declaration ("Smith Decl."), ECF No. 37, Exh. B, Dec. 6, 2017. One week later, Local 3's members unanimously voted to ratify the MOA. *Id.*

After a protracted argument over whether the riders in the original CBA would carry over to the new CBA, Local 3 refused to sign the agreement. *Local Union No. 3*, 363 NLRB No. 29-CB-125701 at 15.

### C. Local 3's Continued Acceptance of, and Benefit from, the CBA

Immediately following ratification of the MOA, the employer implemented the new CBA, including increased wages and improved benefits for Local 3 members. Smith Decl. at 3.

From March 31, 2013 through March 10, 2015, Local 3 continued to acknowledge the new CBA's effectiveness by taking advantage of grievance and arbitration procedures. *Id.* at 7. Over this period the union demanded fourteen arbitration proceedings pursuant to the "terms of

an agreement between the parties." Smith Decl., Exh. D. In their "Notice of Intent to Arbitrate," Local 3 regularly referenced the terms of the new CBA. *See e.g.* Smith Decl., Exh. D., Arbitration Notice, Mar. 10, 2015 ("Whether the Employer violated the collective bargaining agreement by subcontracting Business Service Class service calls.").

In decisions resolving disputes, arbitrators cited and relied on section 24 of the new CBA (Grievance and Arbitration) as their basis for jurisdiction.

> This matter comes before the undersigned Arbitrator pursuant to a demand for arbitration filed by Local 3 . . . Local 3 and [Charter] are parties to a Collective Bargaining Agreement . . . the Company renewed its argument that the grievance was not arbitrable because Local 3 failed to comply with the terms of . . . the CBA . . . The Union contended that it, in fact, complied with the requirements of the CBA.

Smith Decl., Exh. E., American Arbitration Association Case No. 01-0000-5575 at 1, 5-6.

### D. National Labor Relations Board ("NLRB") Decision 1

In response to Local 3's refusal to sign the new CBA, the employer, in March of 2014, filed a complaint with the "NLRB claiming that Local 3 engaged in an unfair labor practice by refusing to sign a collective bargaining agreement implementing the changes in the MOA." *International Brotherhood of Electrical Workers*, No. 17-CV-5357, 2017 WL 4280591, at *2. Both parties effectively conceded that the MOA extended the underlying terms of the original CBA, including the prohibition on striking; the dispute centered on whether Local 3 committed an unfair labor practice by refusing to sign the new CBA without the riders. *See* Smith Decl., Exh.'s F, J.

A three judge panel of the NLRB affirmed a decision of an Administrative Law Judge ("ALJ") finding that Local 3 had not committed an unfair labor practice by refusing to sign the new CBA. *Local Union No. 3*, 363 NLRB No. 29-CB-125701. The ALJ who presided over the initial hearing, held:

there was no meeting of the minds in March 2013 when the parties signed the MOA, that Riders would be excluded from the successor agreement as contended by [Charter] ... the terms of the MOA were ambiguous as to whether the riders from the previous agreements were to be included in the successor agreement.

*Id.* at 18.

In their motion papers, and during the hearing, Local 3 argued that the new CBA was binding and that a meeting of the minds existed to include the riders. The ALJ rejected this argument:

> I make no findings that [Local 3] is correct in its assertion that a meeting of the minds has been established that the successor agreement would include all the riders ... Indeed this was the position espoused by [Local 3] in its charge to the Region.

*Id.* at 19.

### E. NLRB Decision 2

In a separate ruling, on June 14, 2016, an ALJ held that the no-strike clause in the original CBA continued to be enforceable against members of Local 3. *Time Warner Cable and Local Union No. 3*, NLRB No. 02-CA-126860 at 13 (2016) (internal citation omitted) ("[T]he intention of the parties was reflected in the [MOA], which incorporated certain provisions from the expired CBA, including the no-strike clause. The [MOA] constituted a clear continuation of the waiver of employees' rights set forth in the expired CBA ... Therefore, the no-strike clause, which remained in effect on April 2, prohibited the four discriminatees from the 'cessation or stoppage of work, service or employment on April 2.'").

The ALJ found that the prior NLRB decision was binding as to the non-inclusion of the riders, but that the signing of the MOA extended the applicability of the no-strike clause under the CBA.

> The Board's decision in, [353 NLRB No. 30 (N.L.R.B. 2015)] serves as the law of the case on the issue of whether there was an agreement between the parties regarding the expired CBA by virtue of the [MOA] entered into by the parties:

6

there was no meeting of the minds as to significant portions of the agreement (the inclusion of local Riders) and thus, the parties did not agree to all of the material terms of a successor CBA.

It is the [MOA] and not the inability to agree to a successor CBA, which is dispositive with respect to the applicability of the no-strike clause to the events of April 2. The no-strike clause was among the numerous provisions of the expired CBA that were to carry over to the successor CBA but were not mentioned in the [MOA]. Its incorporation by reference in the [MOA] is evidenced by the introduction: '[T]he changes summarized below were agreed upon *relative to the [CBA] which will expire on March 31, 2013* and that the full text of the applicable changes will be incorporated in a new [CBA] which shall become effective upon ratification by the Union membership, scheduled for April 4, 2013." (emphasis supplied) The only reasonable interpretation of that preamble is that the changes mentioned [in] the [MOA] were being added to the language of the expired CBA along with those provisions not mentioned.

*Id.* at 11-12.

III. Law

A. Summary Judgment

Summary judgment is appropriate where no genuine disputes of material fact exist and the movant is entitled to judgment under the law. *See Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). In reviewing a summary judgment motion a court construes the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

B. Jurisdiction Under the Labor Management Relations Act

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), provides federal district court jurisdiction for any suit involving contractual disputes between an "employer and a labor organization." *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001). Jurisdiction under § 301 "will lie to enforce any 'interim' agreement that the employer and union may reach to preserve labor peace until a new CBA can be negotiated." *United Paperworkers Int'l Union, AFL-CIO, Local 274 v. Champion Int'l Corp.*, 81 F.3d 798, 802 (8th Cir. 1996)

7

(citing *United Paperworkers Int'l Union v. International Paper Co.*, 920 F. 2d 852, 859 (11th Cir. 1991)); *Mack Trucks, Inc. v. Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am., UAW*, 856 F.2d 579, 584–85 (3d Cir. 1988) ("Thus, a district court retains independent jurisdiction to decide a case properly brought under § 301, even if the claim may also constitute an unfair labor practice under the NLRA.").

The decisions of the NLRB are non-binding on a district court when deciding a contractual dispute over arbitration.

> Although the Board has occasion to interpret collective-bargaining agreements in the context of unfair labor practice adjudication, the Board is neither the sole nor the primary source of authority in such matters. "Arbitrators and courts are still the principal sources of contract interpretation." Section 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185, "authorizes *federal courts* to fashion a body of federal law for the enforcement of ... collective bargaining agreements." We would risk the development of conflicting principles were we to defer to the Board in its interpretation of the contract.

*Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 202–03 (1991) (internal citations omitted) (emphasis in original).

### C. Intent to be Bound

A party may adopt a CBA through conduct which manifests an intent to be bound, and may "agree to," even "unsigned CBAs." *Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir. 1999) (citing *Moriarty v. Larry G. Lewis Funeral Dirs. Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998)) ("Both [the LMRA] and general principles of contract law permit an employer to adopt a collective bargaining agreement by a course of conduct plus a writing such as the certification line on the contribution report; a signature at the bottom of the collective bargaining agreement itself is unnecessary.").

Courts focus on whether the surrounding circumstances indicate a binding agreement. *Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers Union*, 835 F.2d 1164, 1169 (6th Cir.

1987) ("[T]he course of conduct by the Company after the July 18th meeting suggests that a contract had been formed. Grievances were processed as usual, and union dues were checked off. Of particular importance is the Company's implementation of the economic terms of the agreement."); *Washington Heights-W. Harlem-Inwood Mental Health Council, Inc. v. Dist. 1199, Nat. Union of Hosp. & Health Care Employees, RWDSU, AFL-CIO*, 748 F.2d 105, 108 (2d Cir. 1984) ("[T]he Council participated fully in at least two arbitrations, apparently never claiming that no agreement to arbitrate existed. Indeed, in one arbitration the Council's attorney submitted a posthearing summation dated July 19, 1982—well after the Union sought arbitration in the Lane dispute—in which he relied on a provision in the 1979–80 agreement concerning arbitration."); *C. Volante Corp.*, 194 F.3d at 356 ("[A]ppellant paid its employees the wage scales set forth in the unsigned CBAs."); *Mack Trucks*, 856 F.2d at 592 ("Mack and the UAW ended the bargaining session with a 'handshake meeting,' congratulated each other on reaching a new agreement . . . on May 3, 1987, an overwhelming majority of the affected UAW members voted to ratify the new agreement. Union ratification is generally considered to be 'the last act necessary ... to create a meeting of the minds and an enforceable agreement.'").

Parties may adopt a successor CBA even where there may not be a meeting of the minds on every detail of the agreement. *E. Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 1546, 1551 (11th Cir. 1988) ("[T]he fact that Eastern currently claims wide areas of difference in the interpretation of six important terms is not, of itself, sufficient to support a finding of no contract. Here, as noted by the district court, the outward indicia of agreement point indisputably to a contractual arrangement."); *Bobbie Brooks*, 835 F.2d at 1168 ("[P]arties can form a binding agreement which they intend to be final, despite leaving certain terms open for future negotiation.").

IV. Application of Law

Local 3's conduct manifested an intent to be bound by the no-strike and grievance and arbitration procedures found in the new CBA. This is evidenced by the following: (1) Local 3 and Charter signed a MOA on March 28, 2013, extending the CBA, with amendments, to March 31, 2017; (2) Local 3's 1,300 members unanimously ratified the MOA; (3) Charter implemented, and Local 3 accepted, pay raises, improved benefits and other negotiated changes in the MOA; (4) for almost two years after the signing of the MOA, Local 3 continued to demand arbitration proceedings relying on the new CBA as a binding agreement.

Neither the MOA, nor any discussion between the parties signaled that the new CBA's validity depended on adoption of the riders. *Bobbie Brooks*, 835 F.2d at 1168 ("If the parties agreed to defer negotiation of the non-union production side letter as part of the July 18th agreement, then a binding contract exists. However, if the contract was made explicitly subject to resolution of the non-union production issue, it is not binding."); *see also* Stephen L. Brodsky, *Enforcing Preliminary Agreements Under New York Federal Law*, NYLJ, Jan. 5, 2018.

Even if some terms of a collective bargaining agreement are in dispute, parties may intend to remain bound by provisions requiring arbitration. *Washington-Heights*, 748 F.2d at 108 ("Under this view, which is also urged by the Union, the parties at least agreed to be bound by the grievance and arbitration provisions of the 1979–80 agreement while they attempted to reduce their successor agreement to writing.").

The parties' action in signing the MOA, and their continued conduct, in following its primary terms, indicates that the parties intended to be bound by the no-strike and grievance provisions. *See e.g. Washington Heights--W. Harlem--Inwood Mental Health Council, Inc. v. Dist. 1199, Nat. Union of Hosp. & Health Care Employees, RWDSU, AFL-CIO*, 608 F. Supp. at

396 (S.D.N.Y. 1985) ("There was an oral understanding on a successor collective bargaining agreement, even if there was not a meeting of the minds on all the details of that accord.").

The court's decision is limited to a finding that the parties were bound by the no-strike, grievance and arbitration provisions of the new CBA. The court takes no position on the enforceability of the riders or any other sections of the CBA.

V. Conclusion

Charter's motion for summary judgment is granted. The parties shall proceed to arbitration.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: February 16, 2018
Brooklyn, New York